UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

PATRICK DEWAYNE WILSON,

        Plaintiff,

v.

ANTHONY GWALTNEY,

        Defendant.
_____/

Case No. 1:23-cv-114

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues Warehouse Supervisor Anthony Gwaltney.

Plaintiff alleges that he suffers from complex regional pain syndrome (CRPS) and a thoracic aortic aneurysm. (Compl., ECF No. 1, PageID.2–3.) On June 8, 2022, Medical Provider Suzanne Groff (not a party) updated Plaintiff's "Medical Detail Special Accommodation[]" to provide that Plaintiff should receive a new pair of athletic walking shoes because his old shoes were worn out. (*Id.*, PageID.4.; ECF No. 1-1, PageID.15) Plaintiff's Medical Detail Special Accommodation sheet, attached as exhibit 1 to Plaintiff's complaint, includes a heading titled, "Physical Limitation/Restriction." (ECF No. 1-1, PageID.15.) Under this heading, Plaintiff's Medical Detail Special Accommodation sheet indicates that he is "hearing impaired" and "per audiogram, may house at a non designated fac[ility]." (*Id.*) No other medical conditions are listed under the "Physical Limitation/Restriction" heading. (*Id.*) Then, under a heading titled, "May have the following equipment in his/her possession," a number of items are listed, including "Prescription Shoes – Athletic." (*Id.*)

Three days later, on June 11, 2022, Plaintiff sent correspondence to Defendant Gwaltney to ask why Plaintiff's shoes had not been ordered. (ECF No. 1, PageID.4.) Defendant Gwaltney did not respond. (*Id.*) Plaintiff continued to send correspondence to Defendant Gwaltney every month until Defendant Gwaltney responded on September 2, 2022. (*Id.*; ECF No. 1-1, PageID.18.) In his handwritten note, included within Plaintiff's exhibit 1, Defendant Gwaltney stated, "We did not receive a kite about medical shoes. Healthcare cannot determine what brand or style shoe you have. It is based on the width of your foot. I will place an order for your shoes. When they come in, please bring your current shoes with you to the callout." (ECF No. 1-1, PageID.18.)

On October 5, 2022, Plaintiff saw Medical Provider Groff, who asked Plaintiff why Plaintiff had not received his new shoes. (ECF No. 1, PageID.4.) Medical Provider Groff encouraged Plaintiff to file a grievance against Defendant Gwaltney because the lack of new athletic shoes was damaging Plaintiff's left ankle due to Plaintiff's CRPS. (*Id.*) Plaintiff filed the grievance and, on October 13, 2022, discussed the same with Administrator Assistant Traore (not a party). (*Id.*) Following her meeting with Plaintiff, Administrator Assistant Traore spoke with Defendant Gwaltney. (*Id.*, PageID.5.) Defendant Gwaltney informed Traore that he had ordered Plaintiff's shoes on October 11, 2022. (*Id.*) As of the date of filing his complaint, Plaintiff still had not received his shoes, which he claims is in violation of MDOC Policy Directive 04.06.160. (*Id.*)

Based on the foregoing allegations, Plaintiff brings claims under the First and Eighth Amendments, the Americans with Disabilities Act (ADA), and the Rehabilitation Act of 1973 (RA), as well as tort claims under Michigan state law. (*Id.*, PageID.1, 5–6.) Liberally construed, Plaintiff also brings a claim against Defendant Gwaltney for violation of MDOC policy. (*Id.*, PageID.5.) Plaintiff seeks declaratory relief and compensatory and punitive damages. (*Id.*, PageID.6–7.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment

In the introductory portion of his complaint, Plaintiff states that he brings claims under the "First Amendment Constitution." (ECF No. 1, PageID.1). However, Plaintiff does not otherwise mention the First Amendment or describe the nature of his claim. No matter how liberally construed, Plaintiff's allegations do not give rise to a claim under the First Amendment.

The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the

> right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I. Plaintiff's complaint does not implicate religion, the press, the right to peaceably assemble or to petition the government. And, while Plaintiff alleges that he sent correspondence to Defendant Gwaltney monthly from June 2022, until September 2022, and filed a grievance against Defendant Gwaltney thereafter, (ECF No. 1, PageID.4), Plaintiff does not plead any facts that would allow this Court to infer that Defendant Gwaltney's continued failure to order Plaintiff's shoes was the result of unlawful First Amendment retaliation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that

5

in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotation marks omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, assuming, without deciding, that Plaintiff engaged in protected conduct when communicating with Defendant Gwaltney and in filing a grievance against him, Plaintiff's complaint is devoid of facts that would support an inference of unlawful retaliation. Indeed, Plaintiff does not even go so far as to allege retaliation. Therefore, any intended First Amendment retaliation claim falls far short of the pleading requirements of Federal Rule of Civil Procedure 8 and is properly dismissed.

Accordingly, for all of the reasons set forth above, the Court will dismiss Plaintiff's First Amendment claim against Defendant Gwaltney.

**B.      Eighth Amendment**

Plaintiff alleges that, by failing to order Plaintiff's prescription athletic shoes, Defendant Gwaltney inflicted "cruel and unusual punishment" upon Plaintiff, in violation of Plaintiff's Eighth Amendment rights. (ECF No. 1, PageID.5.) In keeping with the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment, U.S. Const. amend. VIII, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff

7

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component of the Eighth Amendment's deliberate indifference standard requires an inmate to plead facts that would demonstrate that that the prison official had "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Here, the Court assumes without deciding that Plaintiff suffers from an objectively serious medical condition. However, as explained below, Plaintiff's complaint fails to satisfy the subjective portion of the Eighth Amendment's test for deliberate indifference.

Defendant Gwaltney is described as a "Warehouse Supervisor," (ECF No. 1, PageID.2), not a medical professional. Plaintiff indicates only that Medical Provider Groff (not a party) ordered that Plaintiff receive a new pair of athletic shoes. (*Id.*, PageID.4.) However, Plaintiff does not allege that any information was communicated to Defendant Gwaltney regarding Plaintiff's medical condition. Plaintiff's Medical Detail Special Accommodations sheet, attached to Plaintiff's complaint, indicates that Plaintiff is "hearing impaired," but does not include Plaintiff's

diagnosis of CRPS, which the Court has assumed without deciding is an objectively serious medical condition. (ECF No. 1-1, PageID.15.) The Medical Detail Special Accommodations sheet also lists that Plaintiff was prescribed athletic shoes (*id.*) but does not indicate why these athletic shoes were prescribed. That is, the Medical Detail Special Accommodations sheet does not indicate that the athletic shoes were prescribed for a sufficiently serious medical condition and does not otherwise put Defendant Gwaltney on notice that a delay in providing Plaintiff with these shoes would pose a substantial risk of serious harm. See *Farmer*, 511 U.S. at 834. And while Plaintiff sent correspondence to Defendant Gwaltney on September 2, 2022, Plaintiff only asked Defendant Gwaltney why Plaintiff had not received his shoes. (*Id.*, PageID.18.) Plaintiff does not allege that he or anyone at the prison informed Defendant Gwaltney of Plaintiff's CRPS or the potential health consequences of a delay in Plaintiff's receipt of a new pair of prescription athletic shoes.

Ultimately, Plaintiff fails to allege any facts that would allow this Court to infer that Defendant Gwaltney was subjectively aware of a substantial risk of harm that would result from a delay in Plaintiff receiving his prescription athletic shoes, and certainly not that Defendant Gwaltney actually drew that inference. At best, Plaintiff has alleged facts that demonstrate that Defendant Gwaltney was negligent in not promptly placing the order, which had been placed by Plaintiff's medical provider. But negligence does not state a claim for deliberate indifference under § 1983. *Farmer*, 511 U.S. at 835. The Court will therefore dismiss Plaintiff's Eighth Amendment claim against Defendant Gwaltney.

    **C.**    **Americans with Disabilities Act and Rehabilitation Act**

Plaintiff alleges that Defendant Gwaltney denied Plaintiff his prescription athletic shoes, which Plaintiff requires for his physical disability. Plaintiff seeks to bring claims under the ADA, 42 U.S.C. §§ 12132, and the RA, 29 U.S.C. 794(a). (ECF No. 1, PageID.1.) He alleges that

9

Defendant Gwaltney violated the ADA and RA "by his own discriminatory acts of lying and excluding the Plaintiff from receiving the benefits of Medical ACMO Approved Athletic Shoes, for Plaintiff's disability." (*Id.*, PageID.5.)

"Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452 (6th Cir. 2008) (quoting 42 U.S.C. § 12132). To establish a *prima facie* violation of Title II of the ADA, a plaintiff must allege sufficient facts to demonstrate that (1) he has a disability, (2) he was otherwise qualified, and (3) he was "being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of h[is] disability." *Douglas v. Muzzin*, No. 21-2801, 2022 WL 3088240, at *5 (6th Cir. Aug. 3, 2022) (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)).

Similarly, § 504 of the RA provides: "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The elements of an RA claim are similar to those in a Title II ADA claim. The Plaintiff must allege facts to show that (1) he is disabled, (2) he is otherwise qualified, (3) "he was excluded solely by reason of his disability;" and (4) that the relevant program is receiving federal financial assistance. *Douglas*, 2022 WL 3088240, at *5. Although the two statutes differ in their causation standards, courts frequently analyze claims under the RA and Title II of the ADA together. *Id.* (citing *Doe v. Woodford Cnty. Bd. of Educ.*, 213 F.3d 921, 925 (6th Cir. 2000); *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013); *R.K. ex rel. J.K. v. Bd. of Educ. of Scott Cnty.*, 637 F. App'x 922,

10

924 (6th Cir. 2016) ("[T]he ADA and Rehabilitation Act cover largely the same ground."). Both Title II of the ADA and the RA apply to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs); *Diemond v. Mich. Dep't of Corr.*, No. 18-1344, 2018 WL 7890769, at *2 (6th Cir. Oct. 31, 2018) ("The ADA and RA do apply to state prisons.").

"Two types of claims are cognizable under [ADA] Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Douglas*, 2022 WL 3088240, at *5 (citing *Roell v. Hamilton County*, 870 F.3d 471, 488 (6th Cir. 2017)). With respect to a claim of intentional discrimination, a plaintiff must allege that the plaintiff's "'disabilities were actually considered by the [defendant] in formulating or implementing' the challenged discriminatory conduct—must 'present evidence that animus against the protected group was a significant factor in" the discriminatory conduct.'" *Id.* (internal citation omitted) (quoting *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015)). In contrast, with respect to a claim for failure to provide a reasonable accommodation, a plaintiff need not show the animus required of a claim of discrimination. *Id*. The plaintiff must allege facts that would show that, because of a refusal to provide a reasonable accommodation, the plaintiff was denied access to services or benefits, such as "medical care, bathroom facilities, or meals." *Id*. at *5–6 (citing *Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs*, 860 F. App'x 381, 386 (6th Cir. 2021), *cert. denied sub nom. Keller v. Chippewa Cnty. Bd. of Comm'rs*, 142 S. Ct. 761 (2022)).

Plaintiff has not alleged sufficient facts to make a *prima facie* showing for either a claim of discrimination or a claim of reasonable accommodation. Although Plaintiff includes a conclusory allegation of "discriminat[ion]" (ECF No. 1, PageID.5), Plaintiff does not allege that

his disabilities were known to Defendant Gwaltney, let alone provide facts that would allow this Court to infer that Defendant Gwaltney's failure to place a timely order for Plaintiff's shoes was motivated by an animus for Plaintiff's CRPS.

Likewise, Plaintiff claims only that he was denied shoes—the alleged reasonable accommodation. Plaintiff does not allege any facts that would demonstrate that, as a result of the denial of Plaintiff's prescribed athletic shoes, Plaintiff was "excluded from participation in, [or] denied the benefits of" any prison program because of his disability. *Douglas*, 2022 WL 3088240, at *5; 42 U.S.C. § 12132; 29 U.S.C. § 794(a). As the Fifth Circuit Court of Appeals has explained, "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012). Because Plaintiff does not allege that he was discriminated against or denied the participation in any prison program because of his disability, the Court will dismiss Plaintiff's claims against Defendant Gwaltney under the ADA and RA.

### D. Violation of MDOC Policy

Plaintiff alleges that Defendant Gwaltney violated MDOC policy in failing to order Plaintiff's athletic shoes. (ECF No. 1, PageID.5.) However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Moreover, to demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property

interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendant Gwaltney violated prison policy fails to raise a cognizable federal claim.

### E. State Law Claims

Lastly, Plaintiff brings state law claims for intentional infliction of emotional distress and gross negligence. (ECF No. 1, PageID.6.) In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because Plaintiff's federal claims will be dismissed, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Therefore, Plaintiff's state law claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's state law claims without prejudice. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   March 8, 2023                               /s/ Jane M. Beckering
                                                     Jane M. Beckering
                                                     United States District Judge